**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KEYAN R. PRICE,

                                          Plaintiff,

              - v -                                          Civ. No. 9:06-CV-0029
                                                                    (TJM/RFT)

Dr. JACK KEISER, *Cayuga Corr. Facility*,

                                          Defendant.

**APPEARANCES:**                            **OF COUNSEL:**

KEYAN R. PRICE
Plaintiff, *Pro Se*
96-A-6137
Elmira Correctional Facility
P.O. Box 500
Elmira, N.Y. 14902

HON. ANDREW M. CUOMO                              RISA L. VIGLUCCI, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendant Jack Keiser
The Capitol
Albany, N.Y. 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

      *Pro se* Plaintiff Keyan Price brings this civil action, pursuant to 42 U.S.C. § 1983, alleging

that Defendant Jack Keiser, M.D., was deliberately indifferent towards his serious medical needs

in violation of the Eighth Amendment.  Dkt. No. 1, Compl. at ¶¶ 68-70.  Plaintiff brings a Motion

for Summary Judgment to which Defendant has responded with a Cross Motion for Summary

Judgment.  Dkt. Nos. 12 & 17.  For the following reasons, it is recommended that both Plaintiff's

Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment be **DENIED**.

# I.  FACTS

On February 8, 2005, Plaintiff injured his right wrist in a fight at the Auburn Correctional Facility.  Dkt. No. 12, Keyan R. Price Aff., dated Sept. 18, 2006, Ex. A, Ambulatory Health Record (hereinafter "AHR"), at p. 1 Box # 2.[1]  Plaintiff had x-ray's taken of his wrist on February 9, 2005 at the Auburn infirmary which revealed a "widening of the scapholunate space consistent with ligamentous disruption" but "[n]o evidence of acute fracture." Dkt. No. 12, Plaintiff's 7.1 Statement at ¶ 2.[2]  On March 3, 2005, Plaintiff was transferred to Cayuga Correctional Facility where a nurse[3] noted the torn ligament in his right wrist as well as Plaintiff's complaints of palpitations and lightheadedness.  AHR at p. 5, Box ## 13-14.  On March 12, 2005, Plaintiff complained that the pain medication he was prescribed for his wrist, Naprosyn, was not helping much, prompting the infirmary nurse to schedule an appointment for Plaintiff to see Defendant Dr. Keiser.  Id. at p. 6, Box # 17.  Plaintiff claims he requested an ace bandage from a nurse on that date to keep his wrist from moving.  Dkt. No. 1, Compl. at ¶ 20.  Prior to the scheduled appointment, Dr. Keiser increased Plaintiff's Naprosyn dosage.  AHR at p. 6, Box # 18.

On March 15, 2005, Plaintiff complained to a nurse that he was experiencing extreme pain in his right wrist.  Id.  On March 24, 2005, Plaintiff saw Dr. Keiser, who noted the "widened scapholunate space" and  "ligament[] disruption" in Plaintiff's right wrist, and referred him to an

---

[1] Plaintiff has conveniently numbered each entry in the AHR which we will refer to as "Box #" for ease of reference.

[2] When the Defendant has not objected to a particular statement of fact proffered in the Plaintiff's 7.1 Statement, or visa versa, we will not cite to both 7.1 Statements.  See N.D.N.Y.L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.") (emphasis in original)

[3] The signatures of the nurses on the photocopied pages of the Ambulatory Heath Record are illegible.  Plaintiff refers to the infirmary nurse who treated him as "Steve." See, e.g., Compl at ¶ 20.  In any event, no nurse is a named Defendant in this action.

orthopedic to have his wrist examined.  AHR at p. 7, Box # 21; Price Aff., Ex. B, NYSDOCS Request & Rep. of Consultation Form, dated Mar. 24, 2005.  Plaintiff claims he again requested an ace bandage to stabilize his wrist on that date from Dr. Keiser.  *Id*.  However, two days later, Plaintiff was seen by a nurse  who noted that Plaintiff "forgot to ask [the] MD for [an] ace wrap/support." AHR at p. 8, Box # 23.  Plaintiff contests that he forgot to ask Defendant for the ace bandage.  Compl. at ¶ 30.  On April 1, 2005, Plaintiff saw a nurse who noted that Plaintiff complained of pain in his wrist while sleeping and had asked for an ace wrap or other support to stabilize it.  AHR at p. 8, Box # 24.  On April 5, 2005, Plaintiff complained to a nurse about his wrist pain, which was particularly severe when he bent it, and of losing sleep because of the pain in his wrist.  *Id*. at p. 9, Box # 26.  Two days later Dr. Keiser saw Plaintiff, noting that there was no complaint of wrist problems and no wrist support would be prescribed, but continuing his previous Naprosyn prescription.  *Id*. at p. 9, Box # 27.

Plaintiff made complaints of wrist pain to the infirmary nursing staff on April 10 and April 12, 2005.  *Id*. at p. 10, Box ## 28 & 29.  On April 18, 2005, a nurse noted Plaintiff wanted his medical record to reflect that he hurt his right wrist when he moved from one cell to another because the Correction Officer would not allow him to use a cart to move his belongings.  *Id*. at p. 11, Box # 33.  Plaintiff complained of severe pain in his right wrist on April 22 and April 26, 2005, to a nurse, who noted on the latter date that there was no "real swelling" in Plaintiff's wrist and that Plaintiff complained of twisting his wrist while sleeping.  *Id*. at p. 12, Box ## 35 & 36.  On each of the following two days, Plaintiff complained of bending his wrist in his sleep and requested a wrist brace.  *Id*. at p. 13, Box ## 37 & 38.  Dr. Keiser denied said request on April 28, 2005, noting Plaintiff was scheduled to see an orthopedic specialist on May 2, 2005.  *Id*.

On May 2, 2005, Plaintiff was seen by orthopedist Dr. Zelko who diagnosed Plaintiff's wrist as severely sprained and recommended Plaintiff see an orthopedic hand surgeon urgently, within one or two weeks.  NYSDOCS Request & Rep. of Consultation Form, dated May 2, 2005.  Dr. Zelko fashioned Plaintiff a splint which he was allowed to keep.  Pl.'s 7.1 Statement at ¶ 19.  On May 9, 2005, Dr. Keiser requested that Plaintiff be referred to an orthopedic hand surgeon, and an appointment was set for May 18, 2005.  Price Aff., Ex. C, NYSDOCS Request & Rep. of Consultation Form, dated May 9, 2005.  On May 18, 2005, Plaintiff saw Dr. Wright at the University Medical Center (SUNY) in Syracuse, New York, who recommended Plaintiff undergo a surgical procedure to remove certain bones that were attached to the torn ligament in his wrist.  Price Aff., Ex. C, Outpatient Progress Notes and Physician's Order Sheet, dated May 18, 2005; Pl.'s 7.1 Statement at ¶ 21.  On September 20, 2005, Dr. John Mosher successfully performed surgery on Plaintiff, removing the aforementioned bones from his wrist.    Dkt. No. 12, Ex. F, Operative/Procedure Rep., dated Sept. 20, 2005.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in

*-4-*

accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. Fed. R. Civ. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*,

the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).   Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment.  *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

When considering crossmotions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).  "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d at 1461.

### B.  Eighth Amendment Claim

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.  Prohibited punishment includes that which "involve[s] the unnecessary and wanton infliction of pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs." *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (internal quotation marks and citations omitted) (alteration in original).  This standard contains both objective and subjective elements.  *Id.*  "The objective 'medical need' element measures the severity of the alleged

deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183-84 (citing *Chance v. Armstrong*, 143 F.3d at 702 & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  The subjective element "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

In the case at bar, we turn first to whether Plaintiff suffered from a serious medical illness or injury under the Eighth Amendment. *Smith v. Carpenter*, 316 F.3d at 184.  Some of the factors that determine whether a prisoner's medical condition is serious include: "1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, 2) whether the medical condition significantly affects daily activities, and 3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003) (internal quotation marks and citations omitted) (noting that an inmate is not required to show "that he or she experiences pain that is at the limit of human ability to bear, nor [does the court] require a showing that his or her condition will degenerate into a life threatening one").

Plaintiff complained of substantial pain in his wrist upon his arrival at Cayuga Correctional Facility, and continued such complaints up until his wrist was surgically repaired. *See supra* Part I at pp. 1-4.  Examination by orthopedic specialists revealed that Plaintiff had a severely sprained wrist with a torn ligament, that his flexibility and range of motion were limited, and that Plaintiff experienced pain as a result of this injury.  NYSDOCS Request & Rep. of Consultation Form, dated May 9, 2005; Outpatient Progress Notes and Physician's Order Sheet, dated May 18, 2005; Operative/Procedure Rep., dated Sept. 20, 2005; *see also supra* Part I at pp. 1-4.

-7-

The record shows that Plaintiff suffered from an injury that affected his ability to use his right wrist on a daily basis. All of the doctors who treated Plaintiff during this period, including Defendant, agreed with the analysis presented in his x-ray report that there had been ligament damage in his right wrist. *See* Price Aff., Ex. E, Radiologic Consultation Rep., dated Feb. 10, 2005. Likewise, all of the doctors noted that Plaintiff was in pain, especially when he moved his wrist. This injury warranted a referral by Defendant to an orthopedic doctor, who prescribed "urgent" treatment, and from that doctor to an orthopedic hand surgeon. We find, therefore, that whether Plaintiff suffered from a serious injury under the Eighth Amendment is a question which should be determined by the trier of fact. *Brock v. Wright*, 315 F.3d at 162-63; *see also Irby v. Frisnia*, 119 F. Supp. 2d 130, 132 (N.D.N.Y. 2000) (stating in reviewing a motion for summary judgment that Plaintiff could "potentially show that his [torn Achilles tendon] was sufficiently painful to satisfy the objective prong of the deliberate indifference test under the Eighth Amendment") (citing, inter alia, *Hemmings v. Gorcyzk*, 134 F.3d 104, 109 (2d Cir. 1998)).

Turning now to the subjective prong of our Eighth Amendment analysis, we must determine whether Defendant acted with deliberate indifference towards Plaintiff's serious medical injury. A prisoner must show "more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability." *Smith v. Carpenter*, 316 F.3d at 184 (internal quotation marks and citation omitted). Prison officials act with deliberate indifference "when [they] 'know[] of and disregard[] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. at 837). However, if the treatment involved "culpable

recklessness, i.e., an act or failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of harm,'" then it may constitute deliberate indifference. *Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Farmer v. Brennan*, 511 U.S. at 839).

Plaintiff claims that Defendant's refusal to provide a splint or ace bandage for his wrist from the time he first made the request on March 24, 2005, until he was provided one by orthopedist Dr. Zelko on May 2, 2005, amounted to deliberate indifference. Plaintiff first met with Keiser on March 24, 2005. *See supra* Part I at p. 2. On that date, Keiser referred Plaintiff to an orthopedic specialist to have his wrist examined and increased Plaintiff's Naprosyn dosage, but he did not prescribe a wrist brace. *Id*. On April 7 and April 28, 2005, Keiser denied Plaintiff's requests for a wrist brace, noting on the latter date that Plaintiff was to see an orthopedic specialist on May 2, 2005. *Id*. at p. 3. On May 2, 2005, Dr. Zelko provided Plaintiff a splint. *Id*. at 4.

As previously noted, every doctor who treated Plaintiff during the period in question agreed that Plaintiff had suffered ligament damage to his wrist as indicated in the x-ray report. At their first meeting, Defendant Dr. Keiser noted that Plaintiff had a "widened scapholunate space" and "ligament disruption" in his right wrist, and that he was experiencing "painful movement." NYSDOCS Request & Rep. of Consultation Form, dated Mar. 24, 2005. Defendant recognized that Plaintiff was in pain, particularly when he moved his right wrist, but refused to provide him with a splint or ace bandage to immobilize that wrist. During the period in question, Plaintiff consistently complained of pain in his wrist and that the Naprosyn was not effective. *See* AHR at pp. 6-14. In addition, Plaintiff claims he unnecessarily suffered extreme pain while moving in his sleep, moving his belongings from another cell, and being handcuffed too tight during a trip outside his cell. *Id*.

In deciding this Motion for Summary Judgment, our task is to "discern[] whether there are

any genuine issues of material fact to be tried, not to decide[] them." *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d at 1224.  While it is true that accusations of negligence and medical malpractice do not constitute viable claims under the Eighth Amendment, it is not altogether clear, based on the record before us, with what degree of culpability, if any, Defendant acted when he refused to provide Plaintiff with a splint or ace bandage. *Cf. Heath v. Saddlemire*, 2002 WL 31309318 at * 5-6 (N.D.N.Y. Mar. 11, 2002) (where we held Defendants' failure to provide a splint for Plaintiff's broken fingers did not constitute deliberate indifference when x-rays showed that a splint was not medically necessary).  Whether Defendant acted with deliberate indifference is a question of material fact that cannot be decided at this stage as a matter of law, and, thus, dismissal of this case on summary judgment for either movant is precluded.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 12) be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's Cross Motion for Summary Judgment (Dkt. No. 17) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fᴇᴅ. ʀ. Cɪᴠ. P. 72, 6(a), & 6(e).


September 21, 2007
Albany, N.Y.


_____
RANDOLPH F. TREECE
United States Magistrate Judge